UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

$\qquad$ *Plaintiff,*

Case No. 00-CR-009S

Vs.

PETER GERACE and
MICHAEL GEIGER,

$\qquad$ *Defendants.*

---

**DEFENDANT PETER GERACE'S STATEMENT REGARDING SENTENCING
FACTORS, SENTENCING MEMORANDUM, AND
REQUEST FOR DOWNWARD DEPARTURE**

DATED:      Buffalo, New York
            June 14, 2006

Respectfully submitted,

/s/Paul J. Cambria, Jr.
PAUL J, CAMBRIA, JR.

LIPSITZ, GREEN, FAHRINGER,
ROLL, SALSIBURY & CAMBRIA LLP
PAUL J. CAMBRIA, JR., ESQ.
MICHAEL P. STUERMER, ESQ.
Attorneys for Defendant
PETER GERACE
Office and Post Office Address
42 Delaware Avenue
Buffalo, New York 14202
(716) 849-1333
pcambria@lglaw.com

TO:        ANTHONY BRUCE, ESQ.
              ASSISTANT UNITED STATES ATTORNEY
              138 Delaware Avenue
              Buffalo, New York 14202

              DAVID BALL
              UNITED STATES PROBATION OFFICER
              68 Court Street
              Buffalo, New York 14202

**PRELIMINARY STATEMENT**

After many years of bearing the weight of the burden of the tragic consequences of his actions upon his family and himself, Peter Gerace will stand before this Court for sentencing on June 27, 2006.

As this Court is well aware, this matter has involved extensive litigation over the course of several years.  The conduct that formed the basis for the Indictment is alleged to have occurred between the years of 1992 and 1995.  In other words, the conspiracy is alleged to have initiated nearly 14 years ago.

By way of background, Peter Gerace and his co-defendant, Michael Geiger, were charged in a one count Indictment filed in the District Court for the Western District of New York charging him with wire fraud in violation of §1343 of Title 18 of the United States Code.

Subsequently, on January 14, 2000, Mr. Gerace appeared before former Magistrate Judge Carol E. Heckman, and Mr. Gerace was released on his own recognizance with pre-trial supervision.

As reflected in the presentence report, Mr. Gerace maintained compliance with his conditions of supervision and reported as directed.  He was subsequently removed from pretrial supervision as a condition of his bail on August 28, 2001.

On November 23, 2005, Mr. Gerace appeared before the Hon. William M. Skretny, United States District Judge and pled guilty to Count 1 of the Indictment.

3

**THE PLEA AGREEMENT**

The Plea Agreement contemplated that the 1994 edition of the Sentencing Guidelines Manual would be used to determine the defendant's offense level and criminal history.[1]

The government and the defendant agreed that Guidelines §2F1.1(a) applied to the offense of the conviction and provided for a base offense level of 6.

The government and the defendant agreed that the following specific offense characteristics applied to the offense of conviction: (a) §2F1.1(b)(1)(B): the total loss (including relevant conduct) was in excess of $2,000.00, namely approximately $3,600.00 and thus there is a one offense level increase; and (b) the two-level increase pursuant to Guidelines §2F1.1(b)(2) because the defendant's offense involved a scheme to defraud more than one victim.

The Plea Agreement further contemplated that the government and the defendant agreed that because the defendant was an organizer, manager, and supervisor in the criminal activity charged in Count One of the Indictment, his offense level was increased four (4) levels pursuant to Guidelines §3B1.1(c).

Based on the foregoing, it was the understanding of the government and the defendant that the adjusted offense level for the offense of conviction was 13.

The Plea Agreement also indicated that the government agreed not to oppose the recommendation that the Court apply the two-level downward adjustment of Guidelines §3E1.1(a) (acceptance of responsibility), which would result in a total offense level of 11.

The Plea Agreement further explained that the government and the defendant agreed that defendant Gerace's criminal history category is I.

---

[1] As reflected in the presentence report, the probation office has utilized the 2005 edition of the Sentencing Guidelines Manual as it is most beneficial to the defendant. [PSR, ¶ 39, p. 8].

4

Finally, it was the understanding of the government and the defendant that, with a total offense level of 11 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 8-14 months, a fine of $2,000.00 to $20,000.00, and a period of supervised release of up to three years.

The Plea Agreement further permitted defendant Gerace the right to move for a one (1) level downward departure pursuant to Guidelines §5K2.0, on the basis that defendant Gerace's positions in certain businesses are extraordinary circumstances justifying such a departure to his offense level. The government reserved the right to oppose the defendant's motion.

## THE PRESENTENCE REPORT SENTENCING CALCULATIONS

As reflected above, the presentence report contemplated that the 2005 edition of the Sentencing Guideline Manual would be used because it is most beneficial to the defendant.

Pursuant to the presentence report, the United States Sentencing Commission Guideline for a violation of 18 U.S.C. §371 as it relates to 18 U.S.C. §3143 is found in §2B1.1(a)(2) and calls for a base offense level of 6.

The presentence report further explained that because the instant offense involved 10 or more victims, there is a two-level increase pursuant to §2B1.1(b)(2)(A)(I).

Unlike the Plea Agreement, the presentence report contemplates that pursuant to §3A1.1(b)(1) there is a two-level increase as the "majority of victims defrauded by the defendant's company were elderly and considered unusually vulnerable due to their age." [2]

The presentence report further indicated that defendant Gerace and his co-defendant, Michael Geiger, were the owners of Advance Distributing and served as an organizer or leader of a

---

[2] On June 5, 2006 both defendant Gerace and defendant Geiger filed a memorandum opposing the implementation of §3A1.1(b)(1).

criminal activity involving five or more participants or was otherwise extensive.  As a result there is a four-level increase pursuant to §3B1.1(a).

As a result, the presentence report concluded that the adjusted offense level is 14.

The presentence report further contemplated that the defendant demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal activity which, pursuant to §3E1.1(a), results in a reduction of two levels.

The adjusted offense level is therefore 12.

Based on the foregoing, the presentence report concludes that the total offense level is 12.

The presentence report further indicted that based on a total offense level of 12 and a Criminal History Category of I, the Guideline Imprisonment Range is 10 to 16 months.

## MR. GERACE'S CRIME OF CONVICTION

In late 1992 Peter Gerace and Michael Geiger incorporated Advanced Distributing, Inc. ["Advanced"].

Salespeople were thereafter hired to act as both front sales people and reload sales people to attempt to sell products.  Those products included, for example, water filters, cleaning products and skin and hair care products.

The salespeople made phone calls to sell the products using a pre-printed "pitch" contained in a "pitch book" which Mr. Gerace and Mr. Geiger adopted.  Within the pitch book was an instruction to represent to a potential customer that he or she had been selected to participate in a "promotion" and as a result would be receiving one of four premiums, which were, for example, a new Cadillac, a $5,000.00 cashier's check, a big screen television or a vacation for two of either four days and three nights or three days and two nights.

6

If a potential customer was hesitant to purchase any of the products, the pitch book also contained various rebuttal representations.

The "pitch book" contained a rebuttal entitled "Justifying the Price." That rebuttal which was knowingly adopted for use by Advanced's salespeople by Mr. Gerace, included a statement to a potential customer that: "You are absolutely guaranteed one of the biggest and best premiums we are giving out for the entire year."

Mr. Gerace knowingly adopted this "justifying the price" rebuttal and knew that the statement was false and directed the employees to utilize such statement when necessary in order to induce potential customers to make product purchases.

## MR. GERACE'S PRE-TRIAL ADJUSTMENT

As reflected above, the presentence report indicates that on August 28, 2001 (nearly five years ago) Mr. Gerace was removed from pre-trial supervision which was a condition of his bail. The presentence report further correctly indicates that Mr. Gerace "maintained compliance with his conditions of supervision and reported as directed" while under supervision. [PSR, ¶ 8, p. 4].

## MR. GERACE'S BACKGROUND
## AND PERSONAL CHARACTERISTICS

By all accounts, Mr. Gerace is an extremely hard-working, family oriented individual.

Mr. Gerace was born on April 15, 1967 in Buffalo, New York. His parents, Peter Gerace, Sr. and Linda Gerace are extremely close with Peter. As reflected in the presentence report, Mr. Gerace maintains that he has an excellent relationship with his parents describing a very "tight family relationship." [PSR, ¶ 51, p. 10].

Mr. Gerace is the oldest of three children. He has two younger brothers, David Gerace, age 36 and Anthony Gerace, age 25. David Gerace is presently residing with his parents and is

currently unemployed. Anthony Gerace resides with Peter and is employed as a bartender at Pietro's Restaurant.

Mr. Gerace was married in 1996 in Buffalo, New York to the former Deborah Schmitt. They were subsequently separated in May of 2003 and divorced in June 2004. They had one son together, Peter Gerace, III, age five, who resides with Mr. Gerace's ex-wife in East Amherst, New York.

Mr. Gerace has indicated that although he and his ex-wife are divorced, they continue to maintain a very good relationship and spend a significant amount of time together. They are currently in the process of considering getting back together.

Mr. Gerace indicated that in 2001 he was involved in an automobile accident. Because of the injuries he sustained, he was unable to be as physically active as he once was which led to depression. He believes that his depression contributed to his marital difficulties with Deborah.

Mr. Gerace is very involved in his son's life. He spends a considerable amount of time with him on a regular basis. As reflected in the presentence report, Deborah has explained that Peter Gerace is a very good father. [PSR, ¶ 56, p. 11]. Peter is also the proud father of Nicholas Gerace who is two months old.

As reflected in greater detail below, Mr. Gerace is fairly active in Pietro's Restaurant in Clarence, New York. The restaurant is owned by his mother.

In addition to assisting his mother at Pietro's, Mr. Gerace is the general manager of Pharaoh's Gentleman's Club located in Cheektowaga, New York.

Mr. Gerace is also co-owner of Clear Alternative of WNY d/b/a G&G Petroleum and his business partner is Michael Geiger. They are equal partners in this enterprise which operates a gasoline service station located at 1543 Niagara Street in Buffalo, New York. Clear Alternative of

WNY was incorporated in New York State on October 27, 1993. Mr. Geiger handles the day-to-day affairs of the business and Mr. Gerace assists during periods when Mr. Geiger may be out of town.

There is little doubt that Mr. Gerace is a hard worker who is needed by these companies for many reasons set forth in more detail below.

### THE MANY LETTERS SUBMITTED ON BEHALF OF MR. GERACE REVEAL HIS TRUE NATURE AND CHARACTER

Mr. Gerace's family and friends have submitted letters on his behalf. I have attached those letters received on Peter's behalf and I hope the Court has the time to read the letters and the statements they contain about the deeds this man has performed from his heart, in order to try to help other people who are less fortunate than he is. I have taken the liberty of excerpting the comments made by those who submitted letters. They read as follows:

## *Linda Gerace*

> I would like to give you some background on Peter's life that I believe reveals the true person he is. My relationship with Peter is not only one of mother/son, but also as a business consultant. He is instrumental to the successful running of both my businesses, Pietro's Ristorante, and Pharoahs. My husband is not able to assist me in running either business due to a previous heart attack, as well as his current cardiovascular disease and diabetes. The seriousness of these chronic illnesses does not allow him to endure any extra stress. Therefore, since the opening of both businesses, my son Peter has taken on many responsibilities that my husband has been unable to fulfill. Such responsibilities include taking care of my bookwork, sales taxes, advertising, insurances, and computer entries, all of which neither my husband nor I have the time, knowledge, or experience to do. It would be a hardship for me to run either business without him and I do not have the finances to hire anyone capable of fulfilling his tasks.

> On a more personal, mother-son basis, I am very proud of the admirable family man that Peter has grown to be. He grew up in a Catholic home and went to a Catholic grammar and high school. As a child, he was never a trouble maker, and always did well in school.

9

He has always been close with his grandparents, respectful to elders, and a very well-liked person because of his mannerism and genuine concern for others. He has two brothers who he is also very close to. Of most importance in Peter's life right now, though, is his five year old and newborn son. He is very involved in both their lives and loves them dearly. It would be devastating for him to be away from them for any length of time.

I know that Peter is genuinely remorseful and feels terrible about any anguish and difficulties he has caused anyone. Although he used poor judgment regarding this matter, he did not set out to intentionally deceive anyone. I hope and pray that you will show him lenience and spare him from any jail time. He has suffered and stressed over this for quite a while, as have ourselves and all our family. Please spare his children from the same.

## *Peter Gerace, Sr.*

I am Peter's father and I would like to tell you about our relationship and how much he means to me. He was my first born son and has always been close to me and his family. I consider him to be a very good person, and since his childhood years, he has been an excellent role model for his two younger brothers who he is also very close with. He attended St. Andrew's Grammar School and graduated from St. Joseph's Collegiate Institute. When he graduated, I was very proud of him and knew the foundation and friendships he made there would stay with him throughout his life. He has never been in any trouble with the law, and so when these charges were brought against him I was understandably very shocked and upset. As is any father's wish, I always tried to create a positive name for our family which my children would be proud to carry on and instill in their children. After all of our hard work, it would be disappointing to see our family name tarnished.

My wife has two businesses which Peter is a very big help in. Due to my health problems, I cannot take on any extra stress and also don't have the knowledge to help or do the things that Peter does for both businesses. I know my wife cannot manage either business on her own and fear they will not be able to operate without Peter. They have both worked very hard to make the businesses successful and it would be unfortunate to see either of them have to close. We are also very concerned for the future of the many employees and their families if either business could not operate due to Peter's absence. There are over 120 dedicated, hard working individuals employed by both companies. Their livelihoods depend of Peter's presence and knowledge in the companies.

Peter is very close with his two brothers and all his family. He has a five year old son (soon to be six) and a six week old son who he loves

very much and would be devastated to be without for any length of time. In consideration of his clean record, I beg you not to give him any jail time and allow him to move forward with his life. I promise you you'll never regret your decision for I am confident that Peter has learned a hard lesson from this and from here on out will forever live a law abiding life.

It's very hard for me to watch my son go through this, and a part of me can't help but feel like I am going through it also. Peter has been confiding in me and seeking advice and support regarding this matter. Emotionally and physically it has taken a toll of the both of us, as well as several other family members and close friends. I know that one of Peter's major concerns is the effect that the situation has had on his grandparents. At 83 years old, any unwanted stress becomes a serious detriment to their health. They have a very close, loving relationship with Peter, their first grandchild. If anything happened to Peter, I'm afraid of what it would do to their health.

Thank you for any leniency you can give in your decision.

## *Deborah Gerace*

This letter is regarding Peter Gerace. My name is Deborah Gerace and I have known Peter for 23 years and we were married for 8 years. Peter has always been a hard working business man. He co-owns G&G Petroleum, he also co-owns Rascals Restaurant which he leased out. He also plays an active role at Pietro's and Pharaohs which are owned by his mother. Peter has provided for his family and he comes over to see his son. He is very remorseful for what happened at Advanced Distributing and we have had many conversations about how terrible he feels about his actions. He understands that good people (customers of Advanced) were taken advantage of and he has a hard time accepting that. If you have any questions please feel free to contact me at 689-6237.

## *Mrs. Josephine Todaro*

I am Peter Gerace's grandmother. Your Honor, Peter has been a good boy and never has had any trouble before this. He is well liked and respected.

His father is a very sick man and his mother needs him to help in her businesses. She doesn't know how to work the computer. He is a big help to both his father and mother.

Please take this all in consideration for my grandson. We all love him dearly.

## *Father Joseph F. Moreno*

I am writing this letter of recommendation for Mr. Peter Gerace. I have known Mr. Gerace and his family for many years, and I have celebrated many sacraments for Peter and his family.

In the many years of knowing Peter, I have found him to be a man of principle and moral character. He has strong religious values, which guide him in his daily living as a Father, Business Owner and Community Leader. I have always found Peter to be extremely honest, fair, and hard working. In being a Police and Fire Department Chaplain for several agencies, there were times I needed food for Police Officers, their families and other Law Enforcement Agencies for line of duty deaths, or injuries on the job. Peter and his family were very kind, generous, and loving in donating food and time in helping Police Officers and their families.

Also, in the various parishes that I have been assigned Peter and his family have always helped me with donating food to the needy, the elderly, the sick, and forgotten. In having the resources to help those in need, Peter's heart and soul is always there in trying to bring some light and hope for people who are hurting and experiencing difficult times.

Judge Skretny, I would give the highest moral, religious and character recommendation to Peter. In the years I have known him, he is a man of great faith, values and ethical acumen. Hence, he has helped many in his community, and is a role model for his son in teaching him how to help and be considerate of others.

If any Community Service can be offered to Peter, I would be most happy and willing to have Peter help me in my various parish duties: helping with our parish food pantry in conjunction with the Food Bank, nursing home visitations at St. Francis Nursing Home, and working with the sick children via "Cops Care" in working with many police agencies in visiting homes, hospitals and rehab centers for children with Police, Fire and Sports Personnel.

Judge Skretny, I am most grateful for your time, and consideration in reading this letter for Mr. Peter Gerace.

## *Robert J. Maranto, Jr.*

Please accept this letter as my letter of support for Peter G. Gerace, and my sincere request for the Court to grant leniency in the upcoming sentencing of my lifelong friend.

By way of background, Peter and I first became friends when we were five year old kindergarteners at St. Andrews Country Day School in Tonawanda. Throughout grammar school, and then into high school

at St. Joseph's Collegiate Institute, our friendship grew, and my trust and admiration for Peter advanced.

During the thirty-three (33) years of our friendship, Peter has always demonstrated to me...and those who we have mutually come into contact with, personal honesty and integrity. At times in my personal life when I have needed a friend to consult with, he has always provided a sound, non-judgmental outlet. He is a true friend, both devoted and honest.

Peter has told me countless times that his biggest regret is the pain caused to the customers of Advanced Distributing that were taken advantage of. Knowing Peter as I do he will not forgive himself for what occurred.

As a bridegroom at my wedding, and continuing forward, Peter has become an integral part of our family. My children affectionately refer to him as "Uncle Peter." Peter is also the Godfather of my son, Bobby. As a devout Catholic, deciding on a Godparent for my children was, and continues to be, a decision that I take very seriously. The decision made by my wife and I was undoubtedly the correct one.

In sum, the Peter Gerace who I know is a devoted family man and friend. He is articulate and witty, and provides positive energy to anyone with whom he comes into contact with. I truly believe that justice, and the People, will be served by in this case by a sentence which does not include the presence of Peter Gerace in a correctional facility.

Thank you for considering this letter in the making of your decision.

## *Joseph E. Parisi, III*

My name is Joseph E. Parisi III. I am a former Erie County Deputy Sheriff who served in the 1970's and 80's before starting my own business with my wife. I've known Peter Gerace his entire life. Peter Gerace was born in the house next door to mine in Tonawanda. He is a kind man and has always gone above and beyond to help people. He is dedicated to working for good causes that help to benefit those less fortunate than himself. I even had the opportunity to help him work on a few of his fundraising campaigns for Roswell Park and the Make A Wish Foundation several years ago; both which turned out to be extremely successful.

One particular campaign that sticks out in my mind is when Peter worked to raise funds for a family whose daughter had just finished chemotherapy and was told that her cancer had gone into remission. You could see that the young girl and her family had gone through a very difficult time in their lives. If only you could have seen their faces when they were told that Peter's fundraising efforts had granted

them the ability to take an all expenses paid trip to Hawaii, a trip that they, themselves, were unable to afford. I will never forget their smiles and their expressions of joy. This is the Peter Gerace I know, this is Peter Gerace...he helps people.

I still speak with Peter just about every day. He has repeatedly expressed his remorse over the money that people lost. I do not think that jail time would serve any good purpose. He realizes that he committed a serious crime. He is a good person who is very involved with his family and enjoys spending time with them. In addition to being a family man, Peter is also a businessman in the community. He is a vital part of Pietro's Ristorante in Clarence. I think if he were to get any jail time that it would adversely affect this business to a point where the business would lose clientele and actually affect the jobs of many people in the community. Peter is well known and a well liked individual and people come to see him at the restaurant. If Peter is not there to operate his business, his business will suffer and his employees will run the risk of losing their jobs. I hope you can find it in your heart to offer an alternative solution to this problem.

### Cheryl L. Parisi

My name is Cheryl L. Parisi. I have been a business owner in Erie County for over 20 years. I've known Peter Gerace for over 30 years. I've always known him to be a kind man and a man with a sense of humor. He also is a caring person who has always gone above and beyond to help people. He is dedicated to working for good causes that help to benefit those less fortunate than himself. He has run many fundraising campaigns for Roswell Park and the Make A Wish Foundation, which always turned out to be extremely successful.

I still socialize with Peter regularly. He has repeatedly expressed his remorse over the money that people lost. I truly feel that jail time would not serve any good purpose. He realizes that he made a mistake. He is a good person with a big heart. He is very involved with his family and enjoys spending time with them. In addition to being a family man, Peter is also a businessman in the community. If Peter is not there to operate his businesses, his businesses will surely suffer and his employees will run the risk of losing their jobs. I hope you can find an alternative solution to this problem.

### John L. Michalski

I write to offer you the following information in support of my client and friend, Peter Gerace in advance of his sentencing before you.

I have known Peter for close to ten (10) years now. We met through a mutual friend with whom we are both still close.

Initially, Peter was just a client. I represented him in several real estate transactions and eventually his family in a business venture which transaction took several months to consummate. During that period of time we were in contact daily and he impressed me with his attention to detail and business acumen.

I still represent him and his family regarding two (2) businesses, a restaurant and an adult cabaret. Peter is actively involved in the day to day operation of those entities and his absence from them would constitute a hardship on his family.

Over the course of our business relationship we also became friends. I have had the opportunity to socialize with Pete over the years. In social situations Peter is very engaging and has a great sense of humor.

Peter is also a fantastic Dad. I have observed him with his young son and as a parent he is thoughtful, patient and kind. He is also very excited about the birth of his new baby boy. Our families have socialized together and it is a pleasure to do so because together he and his sons are wonderful.

I cannot speak more highly of Peter. He is a great client, friend, son and father. He is not perfect, however, as none of us are.

We have spoken at length about the mistakes we both have made but in particular about the mistakes he made which bring him before this Honorable Court for sentencing.

He is extremely remorseful regarding the effect his criminal activity has had on the victims of it. He understands and appreciates the consequences of his actions and the hardship he created.

Nevertheless, it is my hope that the Court will fashion the punishment it metes out in a compassionate manner that will allow Peter to continue to work with and support his family, visit with his children (young son) and contribute positively to the community as he has over his lifetime.

He is no risk to our community. He is merely a great person that has made some mistakes for which he has accepted responsibility. As his attorney and friend I ask that this Court sentence him to a period of probation supervision.

## *Angelo S. Natale*

My name is Angelo Natale with Natale Builders, and I am a friend of Peter Gerace for the past 20 years and have been doing business in the community for over 30 years. I am writing this letter of referral not only as a character witness, but as a concerned business person.

While my family has been in business in Western New York for some 40 years, I know the value of having a local business in the community is immeasurable. Peter Gerace's involvement in his business and the community has shown an exemplary position as a community leader. I realize the situation that had occurred to Peter as a youth. I don't believe that at that time that the full ramifications and damage were apparent to him because of his surroundings and his age.

As a mature adult, family man, and business person, I know that his history has proven to help him grow as an adult and as a leader in the community. Peter has several successful businesses in Western New York and is a good father, and anything to deter this momentum would serve as an injustice. I believe he has learned from his mistakes and can prove to be a capable teacher because of it.

Peter's dedication to his family, business and employees, who rely on him, serve as a pillar of strength to our community. Please allow this letter of referral to represent a person who has learned from his past experiences and has proven himself as a community leader.

Please feel free to contact me for any questions or concerns at 759-1788.

## Mr. and Mrs. Daniel Derenda

We would like to share out thoughts with you about Mr. Peter Gerace and his character.

We've known him for about eighteen years and think he is a very kind, considerate and respectful man. He is a very hard working business man who likes to be involved with many activities at one time. He loves to spend time with family, especially his boys. He always goes out of his way to help out whenever asked. He certainly poses no threat to society. We think so highly of him that we had asked him to be the godfather to our daughter Mia last year. My husband being a police officer and myself being a registered nurse, think it's important to surround ourselves and our family with good people. This is why we continue to keep in close contact with Mr. Gerace and his family.

Any more questions feel free to contact us at (716) 896-9630.

## Michael P. Curran, Jr.

My name is Michael P. Curran. I have been a business manager here in Buffalo for the past 6 years. I've known Peter Gerace for a number of years and have always found him to be a kind, generous, selfless man. He has always dedicated himself to helping those less fortunate and has always gone above and beyond to achieve his goals. He has dedicated a portion of his life to working for good causes that help to

benefit those in need. He has run many fundraising campaigns for both Roswell Park and the Make A Wish Foundation; campaigns that have brought about great success.

I still see Peter on a regular basis. He has repeatedly expressed his sincere remorse over the money that people lost. I have seen how he has been able to lift the spirits of those who find themselves in impossible situations. I truly feel that jail time for Peter would not be in his best interest. He is very involved with his family as well as his business. If he is not around to sufficiently run his businesses, his work will suffer and his employees may find themselves without jobs. I truly hope that there can be another way to solve this problem.

## *Eric L. Fox*

My name is Eric L. Fox. I am CEO of Mr. Fox Tire Co,. Inc., located in downtown Buffalo.

I have known Mr. Gerace for over 20 years, both personally and professionally. He has always demonstrated reliability and trustworthiness. I have witnessed his strength and compassion when dealing with his family and in particular, with his son.

Thank you for your time and I would ask that you would consider leniency in this situation.

## *Donald Parrino*

My name is Donald Parrino, co-owner of Pharaoh's GC., Inc. I work in conjunction with Peter Gerace.

My background is in Design and Floor Management. Mr. Gerace acts as the General Manager and is vital to Pharaoh's. He is the only person within the company who has knowledge and vast experience to keep the company running. Without Peter I fear for the future of Pharaoh's. I am 70 years old and my hours limited. Peter does so much for the company. He handles the bookkeeping, accounting, tax payments, banking, supply ordering, advertising, scheduling and needed repairs, etc. during the day and manages the club in the evenings where he is responsible for over 100 workers. These workers and their families depend on the success of this company. Peter Gerace is the heart and soul of its future. Because my background is in design, I would be unable to take over Mr. Gerace's responsibilities.

## *Robert E. Werner, Jr.*

My name is Robert E. Werner, Jr. Assistant Manager of Pharaoh's GC., Inc. I work in conjunction with Peter Gerace.

Mr. Gerace acts as the General Manager and is vital to Pharaoh's. My job responsibilities include getting change for the bar, working and

managing security, and closing at four a.m. six nights a week. I would not be able to handle or take over Mr. Gerace's job responsibilities. I do not have the computer knowledge or experience that Mr. Gerace has to handle the bookkeeping, accounting, tax payments, banking, etc. He is the only person within the company who has knowledge and vast experience to keep the company running.

### MR. GERACE'S CONTRITION

Both counsel for Mr. Gerace have spent a significant amount of time with him over the past several years while this matter has been pending. Through that time, we have discussed Mr. Gerace's crime of conviction. He is no doubt contrite, remorseful, ashamed and tremendously embarrassed by what he did. This is especially true because he is such a family oriented person. It deeply troubles him to know that his actions have impacted other families and their loved ones. Significantly, Mr. Gerace has not offered any excuses for what he has done.

Mr. Gerace knows, in many ways, he has compromised his family, his other businesses, as well as many other people who depend upon him. He has vowed to us that he will never again commit a crime. Given his background and current circumstance it is likely that he will never again find himself in a similar situation.

### MR. GERACE'S CHARITABLE EFFORTS
### SHOULD BE RECOGNIZED

This man who comes before you, Your Honor, possesses many wonderful and good qualities.

Even though Mr. Stuermer and I have known Mr. Gerace for a long time, it was not until we read the letters of reference from people in the community and spoke to people close to Peter, that we realized what a charitable person he truly is.

18

Many times, clients charged with crimes all of a sudden find religion, become charitable and start living some saintly form of life. By and large this post-indictment invented goodness is seen for exactly what it is by the sentencing judge and all too often people who profess to have seen the light once they are in trouble return to their old ways once the tears of sentencing day are dry.

However, every now and then you discover a person whose charity and goodness began long before there was any hint of legal difficulties. Peter Gerace is just such a person.

We have learned through our preparation of the sentencing materials that Peter Gerace has been involved in countless charitable events through the years.

For instance, he served as chairman for five years in the mid 1990's for an annual golf outing that raised thousands of dollars for Roswell Park Cancer Institute.

Mr. Gerace is also very involved with the Make-A-Wish Foundation. With the help of that organization, Peter sent a local high school girl in remission from leukemia with her family to Hawaii to celebrate the young girl's successful battle against the disease.

There are other countless examples of Mr. Gerace's generosity and thoughtfulness that have touched the lives of so many.

That is clearly not to say that these good deeds are in some way a trade off for the commission of a crime but, these actions certainly support a finding that this man has a positive place in his community.

## REQUEST FOR DEPARTURE-ECONOMIC HARM

The letters set forth above, as well as counsels' own observations, clearly indicate that any incarceration would have a direct and significant debilitating effect on the businesses Mr. Gerace is associated with. From the letters and counsels' own investigation, it is clear that Mr. Gerace's knowledge and experience is critical to the future of these companies especially with respect to

19

Pharaoh's Gentleman's Club.   Mr. Gerace is also very important to the success of Pietro's Restaurant and his mother has indicated that she relies upon him heavily for many aspects of the business.   She has explained in her letter to the Court that Peter is the only individual at Pietro's who can perform many of the business tasks.

For instance, Mrs. Gerace explained that Peter takes care of the bookwork, sales tax, advertising, insurances, etc., and that neither she nor her husband have the knowledge to complete those tasks.   [Exhibit A].   She further explained that it would be a hardship for her to run the business without Peter.   [Exhibit A].

Similarly, Donald Parrino, a co-owner of Pharaoh's Gentleman's Club has explained that Mr. Gerace acts as the general manager and has described him as the "heart and soul" of the future of the business.   Mr. Parrino explained that Mr. Gerace "handles all the bookkeeping, accounting, tax payments, banking, supply ordering, advertising and scheduling needed repairs."   [Exhibit A].

Mr. Parrino further indicated that Mr. Gerace is the only individual within the company with the experience and knowledge to keep the company in business:

> He is the only person within the company who has knowledge and vast experience to keep the company running.  Without Peter I fear for the future of Pharaoh's.  I am 70 years old and my hours limited. Peter does so much for the company.  He handles the bookkeeping, accounting, tax payments, banking, supply ordering, advertising, scheduling and needed repairs, etc. during the day and manages the club in the evenings where he is responsible for over 100 workers.

Finally, Mr. Parrino has explained that many workers and their families depend on the business:

> These workers and their families depend on the success of this company.  Peter Gerace is the heart and soul of its future.  [Exhibit A].

20

In *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995) the Second Circuit had occasion to determine whether the facts under consideration comprised such "extraordinary circumstances" falling outside the heartland envisioned by the Sentencing Guidelines. In *Milikowsky, supra*, the Court noted that what distinguished Milikowsky's circumstances from others was the extraordinary impact that the loss of his daily involvement in his business would have on his business and, consequently, on his employees.

The Court noted that it had reviewed unrebutted letters and testimony from family members, employees, business associates, and a creditor attesting to the "indispensability" that the defendant had to his business. As a consequence, the Court found that the record allowed the Court to conclude that the defendant was the only individual with the knowledge, skill, experience and relationships to run his business. The Court found that Milikowsky was the sole buyer of steel, the only person with the requisite ability and contacts to buy steel at competitive rates, the most successful seller, and the person who dealt with the customers and suppliers. As a consequence the Court found:

> The record allowed the Court to conclude, additionally, that Milikowsky's daily involvement at Jordan is necessary to ensure the continuing viability of Prospect, the steel pail company. Milikowsky is the sole buyer of all the steel Prospect uses to make pails and, according to testimony, the cost advantage attributable to his steel buying expertise is virtually the only reason that Prospect remains a viable operation.

Likewise in *United States v. Somerstein*, 20 F. Supp. 2nd 454 (E.D.N.Y. 1998) the court found that the defendant who was indispensable to her business, should be afforded a downward departure. The court noted that the defendant's business depended on her and its precarious financial condition would be greatly increased in her absence. The court found that there were no other individuals suitable to assume the duties of the defendant in her absence and, therefore,

incarceration of the defendant would have imposed a grave hardship on the employees and, with reasonable certainty, would leave them jobless.

It is interesting to note that in determining that a departure was warranted, the court took note of the defendant's exceptional work record. The court stated:

> Suffice it to say that she is an exceptionally hard working person who is devoted to her profession. When on the job, she apparently works around the clock.

In so holding, the court, relying on *United States v. Big Crow,* 899 F.2d. 1326 (8th Cir. 1990) noted that a departure could be granted as a result of a defendant's excellent employment history, solid community ties and consistent efforts to lead a decent life under difficult circumstances. The court found:

> The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom. (*citing United States v. Johnson*, 964 F.2d 124, 125 (2d Cir., 1992).

## CONCLUSION

In submitting this memorandum, counsel is in no way asking this Court to overlook Mr. Gerace's crime of conviction. However, Mr. Gerace possesses many extraordinary traits which we are asking the Court to consider especially his importance to the businesses that depend so greatly upon him. To say that Mr. Gerace is remorseful for the shame and embarrassment that he has caused to himself and his family is an understatement.

It has been a very long and winding road to his point.  We ask that the Court take into account the many factors set forth above and sentence Mr. Gerace accordingly.

DATED:      Buffalo, New York
            June 14, 2006

                                        Respectfully submitted,

                                        /s/Paul J. Cambria, Jr.
                                        PAUL J. CAMBRIA, JR., ESQ.

                                        LIPSITZ, GREEN, FAHRINGER,
                                            ROLL, SALISBURY & CAMBRIA LLP
                                        PAUL J. CAMBRIA, JR., ESQ.
                                        MICHAEL P. STUERMER, ESQ.
                                        Counsel for Defendant
                                        PETER GERACE
                                        Office and Post Office Address
                                        42 Delaware Avenue - Suite 300
                                        Buffalo, New York 14202
                                        (716) 849-1333
                                        pcambria@lglaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                *Plaintiff,*

                                                          Case No.: 00-CR-009S

      Vs.

PETER GERACE and
MICHAEL GEIGER,

                *Defendants.*

## CERTIFICATE OF SERVICE

I hereby certify that on 6/14/06, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system.

I hereby certify that on 6/14/06 a copy of the foregoing was also delivered to the following via CM/ECF.

TO:        ANTHONY BRUCE, ESQ.
            ASSISTANT UNITED STATES ATTORNEY
            138 Delaware Avenue
            Buffalo, New York 14202

I hereby certify that on 6/14/06 a copy of the foregoing was also delivered to the following via hand delivery.

            DAVID BALL
            UNITED STATES PROBATION OFFICER
            68 Court Street
            Buffalo, New York 14202

Dated:      Buffalo, New York
            June 14, 2006

                                  /s/Kelly Mahoney
                                  Kelly Mahoney